## Scott v. Ratliff.

(Decided February 12, 1918.)

Appeal from Franklin Circuit Court.

1. Deeds—Forfeiture Clause if Land is Taken from Grantee for Debt—Validity of.—A grantor may put a condition in a deed that if the grantee becomes involved in debt and creditors seek to subject the land, the grantee shall be divested of title and it shall at once go to his children.

2. Deeds—Children—Includes All Children Living and All After-born Children.—Where the grantor provided in the deed that if creditors of the grantee should attempt to subject the estate conveyed, he should at once be divested of title and it should vest in his children, the word "children" included not only children living when the title was divested, but all after-born children, and a child living at the time the grantee was divested of title took the fee, subject to be opened up by the birth of after-born children.

HAGER & STEWART for appellant.

S. S. WILLIS and R. D. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The only question in this case is, could the appellee, S. M. Ratliff, make a good title to a tract of land that she sold to the appellant, Scott? Whether she could or not depends on the proper construction of a deed made in 1878 by John H. Reynolds and wife to their son, Thomas Reynolds, the father of S. M. Ratliff.

This deed recites: "That said party of the first part for and in consideration of the love and affection that we

have for our (son) and for the further sum of one hun-
dred dollars to be paid to Ann Sowards or her heirs in
five years from this date do hereby sell and convey to
the party of the second part his heirs and assigns the fol-
lowing described property, to-wit: A certain part of the
home farm that we now live on and bounded as follows:
. . . .

"To have and to hold the same, together with all the
appurtenances thereunto belonging unto the party of the
second part, his heirs and assigns forever. And the said
party of the first part hereby covenant with the said
party of the second part that they will warrant the title
to the propery hereby conveyed unto said party of the
second part and his heirs and assigns forever. That is
to say Thomas Reynolds is not to sell or convey said
lands to an*ey* person  except to William Reynolds or C.
Reynolds; and if said Thomas Reynolds should sell or
convey to an*ey* other persons then in that event this deed
shall be void and if said Thomas Reynolds should-*git* in
debt or any *libility* to sell said land then this deed shall
*bee* void and the land to go*w* to his child*ern* and if he
has no child*ran* then it shall go*w* to his brothers and sis-
ters and if Thomas Reynolds should die before his wife
she is to live on said land her lifetime unless she *shuld*
marry and in the event that she *shuld* marry then the
land is to go*w* to said Thomas Reynolds *hirrs* at the date
of said *marrage*. This deed is not to take *a*ffect until the
death of myself and Cyntha Reynolds. . . .   my wife
and at our death then this deed is to go*w* into effect."

It stands admitted that in 1873 Thomas Reynolds,
the grantee in the deed, became involved in debt, and as
a result thereof judgment went against him, and the
exēcution issued thereon was levied on the tract of land
conveyed to him by his father. Thereafter the land was
sold in satisfaction of the execution and purchased by
the execution plaintiff, who had the sheriff make a deed
to the land that he had bought to S. M. Ratliff, she hav-
ing satisfied his execution debt. It is further admitted
on the record that Thomas Reynolds, the grantee in the
deed, is living, and that S. M. Ratliff is his only child.

On behalf of S. M. Ratliff the argument is made that,
as it was provided, in substance and effect, in the deed
to Thomas Reynolds, that if he should get in debt and
any creditor should undertake to subject the land to the
payment of the debt, then the deed to him should be void

"and the land go to his children, and if he has no children, then to his brothers and sisters;" and that as Thomas Reynolds did get in debt and the land was sold to satisfy his indebtedness, this at once divested him of title and at once vested the title in his children, and as she was at the time and is now the only living child, the full title vested in her by virtue of the sale of the land as well as by the deed made by the sheriff, subject to the life estate of John Reynolds and his wife. It may, however, be here observed that there is no controversy between the parties respecting this life estate.

On behalf of Scott the argument is made: (1) that as the deed to Thomas Reynolds conveyed to him, in the granting clause, the fee simple title, this title could not be impaired or divested by subsequent, conditions in the deed; (2) that as Thomas Reynolds, the grantee, is yet living, and upon the defeasance, assuming it to be valid, the deed provided that the land should go to his children, S. M. Ratliff, although the only child of Thomas Reynolds, did not and would not become invested with a good, vendible title until the possibility of further issue to Thomas Reynolds was extinguished, and this could not reasonably be determined until his death.

As to the first proposition, it is the settled law of this state, as declared by this court, that the condition the grantor attached to the conveyance, providing that in the event any creditors of the grantee sought to subject the land, the title should at once go to his children, is a valid and enforceable one. Bull v. Kentucky National Bank, 90 Ky. 452; Bottom v. Fultz, 124 Ky. 302. And so when this condition in the deed was broken by the grantee, he was at once divested of title to the land and the title at once vested in his children, or rather in his daughter, now S. M. Ratliff, as she was at that time his only child.

The remaining question is, did S. M. Ratliff take a fee simple title to the whole of the land or did she take a title part of which at least was subject to be defeated by the birth of other children to the grantee, Thomas Reynolds?

It is plain that if Thomas Reynolds, at the time he forfeited his title to the land, had had other children than S. M. Ratliff, the title would have gone to all of the children in equal shares. But it is contended that as S. M. Ratliff was at that time the only living child, the whole

title vested in her, and having once vested, no part of it was subject to be defeated or taken away from her by the birth of other children.

We do not find ourselves able to agree with this contention. It will be observed that the grantor did not say that the title should vest in the children of the grantee, Thomas Reynolds, living at the time the condition was broken, or use any words that could be construed to mean that he intended that the estate should go to the then living children of Thomas Reynolds, or that after-born children should be deprived of their equal shares in the land with the children living at the time the title devoluted from the grantee to his children. On the contrary, he used without limitation the broad word "children," thereby manifesting a purpose that all the children of the grantee should participate equally in the ownership of the land.

According to the construction placed on this provision by counsel for the appellee, if a child of the grantee had been born six months after the condition was broken, he would be denied the right to share in the land as much so as a child that might be born twenty years afterwards, because the whole argument rests on the proposition that when the condition was broken, the title immediately became vested irrevocably in the then living children of the grantee, as much so indeed as if the deed had been made to them in the first instance, or the children who should take when the condition was broken had been named in the deed to Thomas Reynolds.

It would further follow from this construction that if the grantee had no children when the condition was broken, the land would go under the deed to his brothers and sisters, who would likewise take the fee simple title, of which they could not be divested, in whole or in part, by children subsequently born. The result of this would be that although the children of Thomas Reynolds, if he had any, were to be the first takers, and his brothers and sisters the second, his children if born subsequent to the devolution in the title would be deprived of all interest in the estate. This construction would certainly do violence to the expressed intention of the grantor which was, as we think, that all the children of Thomas Reynolds, no matter when born, should take an equal share in the land. In other words, if only one child was living when the condition was broken, the title would go

to that child, subject, however, to be opened up for the benefit of subsequently born children, who, as each was born, would take his equal share.

Accordingly we think that S. M. Ratliff never had and will not have until the death of Thomas Reynolds without further issue the fee simple title to the whole of this land. The construction we have adopted is in harmony with many opinions of this court construing the meaning of the word "children" in deeds and wills in cases presenting questions whether children living at the time the title vested in the children under some condition in the deed or will took the whole estate to the exclusion of after-born children.

Thus in Barker v. Barker, Jr., 143 Ky. 66, the devise was to Mrs. Caroline M. Stites, and in the event of her death before the will took effect, the property devised was directed to be "divided between the childrn of Richard N. Barker and Maxwell S. Barker, share and share alike." Mrs. Stites died before the testatrix, and the question in the case was whether the testatrix meant to give this property to the children of the Barker brothers referred to in the will who might be living at her death or to them and such others as might be born thereafter to the Barker brothers. In that case upon a construction of the whole will the court held that it was the intention of the testatrix that only those living at her death should participate in the estate, but said:

"At common law a bequest to a class was held to embrace all in the class at the time the bequest was to take effect, but where there was a postponement of the payment of the legacy until a period subsequent to the death of the testator, every person answering the description at the time fixed for the division was held entitled to participate as one of the class. . . .

"In this state, however, the common law rule has not been followed, and in the cases of Lynn v. Hall, 101 Ky. 738; Goodridge v. Schawfer, 24 Ky. L. Rep. 219; Caywood v. Jones, 32 Ky. Law Rep. 1302; Gray's Admr. v. Pash, 24 Ky. L. Rep. 963, and U. S. Fidelity & Guaranty Co. v. Douglas' Trustee, 134 Ky. 374; it is held that a bequest to the children of A. would in the absence of a contrary intent expressed in the will, include not only the children of A. living at the death of the testator, but all such as might thereafter be born to him. It may be said that this rule of construction is now the well-settled law

of this state; and in the absence of some expression in the will indicating a contrary intention on the part of the testatrix, the same principle would govern in the case at bar.''

The rule announced in this case was also approved in Lamar v. Crosby, 162 Ky. 320, in which a number of cases affirming it are cited. Another case in point is McCoy v. Ferguson, Jr., 164 Ky. 136.

The cases of Mullins v. Moberly, 145 Ky. 477; Foster v. Shreve, 6 Bush 519; Turner v. Patterson, 5 Dana 292, are relied on by counsel for appellee, but we find nothing in any of these opinions in conflict with the rule taken from Barker v. Barker.

It results from what we have said that the court committed error in sustaining a demurrer to the answer and counter-claim of Scott, and in effect holding that S. M. Ratliff conveyed to Scott a good title.

Wherefore, the judgment is reversed, with directions to overrule the demurrer, and for proceedings consistent with this opinion.