## Ford v. Ford et al.

(Decided June 11, 1929.)

W. A. DAUGHERTY for appellant.

JOHNSON & HINTON and STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Polly Ford sued her husband, John Ford, Jr., for divorce and alimony and maintenance for herself and children. She was allowed during the pendency of the action the sum of $75 per month for the support of herself and children, and to enable her to prosecute the suit. On final hearing she was allowed permanent alimony in the sum of $25 per month. On her claim for temporary alimony she had the clerk issue an execution for $675. On her claim for permanent alimony, she had an execution issued for the sum of $25. This action was originally brought by John Ford, Jr., against Polly Ford and J. M. Moore, the sheriff of Pike county, to quash the aforesaid executions, and to enjoin the sheriff from selling or attempting to sell any of the property of Ford. Polly Ford filed an answer and cross-petition denying the allegations of the petition and asking that John M. Yost, trustee under the will of John Ford, Sr., be required to satisfy her claim for $675 out of property held by him in trust for John Ford, Jr., and that he be further required to pay a sufficient sum to provide suitable food, clothing, and educational advantages for her children. Evidence was heard, and on final hearing the chancellor quashed the execution of the pendente lite allowance, and enjoined the sheriff from selling, on the execution for permanent alimony, any of the property devised to John Ford, Jr., by his father. He further adjudged that a prior order directing John M. Yost, trustee, to pay the sum of $40 a month for the support and maintenance of the infant

children should stand undisturbed, reserving the right to make such changes in that amount as the circumstances might require. He also authorized the trustee to pay out of the trust fund then on hand such expenses as were necessary to obtain proper medical and hospital services for Howard and Hazel Ford. He also adjudged that the trustee should not be limited by the allowance of $40 a month, but might exercise his discretion and increase the allowance without further order of the court if, in his opinion, such increase was deemed warranted. From that judgment Polly Ford in her own right, and as next friend of her infant children, prosecutes this appeal.

We shall first consider the propriety of the allowance made to the infant children of John W. Ford, Jr., and Polly Ford. J. W. Ford, the father of John Ford, Jr., died testate. By his will he first devised the surface of certain land on Powell's creek, and of the home farm, to John Ford, Jr., for and during his natural life, and after his death to his children, with the provision that John Ford, Jr., should not during his life sell, convey, or incumber his life estate in the aforesaid property, and that it should not be subject to his debts, and further providing that, if he sold, conveyed, or incumbered his interest in his lifetime, his interest should cease, and the estate in fee should immediately vest in his children. He then devised to W. W. Gray, as trustee for the use and benefit of John Ford, Jr., and his children, certain interests in certain real estate. In addition to that he devised to the same trustee for the use and benefit of John Ford, Jr., and his children in trust, certain bank stock and other personal property of similar nature, and provided that the income therefrom should be paid to John Ford, Jr., and his children during the continuance of the trust "as needed for their support and maintenance." He also authorized his trustee to lease the coal, minerals, oils, and gases in the tracts of land referred to, and pay the royalties to John Ford, Jr., for his support and maintenance and that of his children. There was a further provision that, in case of a difference of opinion as to the sums required for the support of John Ford, Jr., and his children, between the said trustee and John Ford, Jr., the parties should submit the matter to the Pike circuit court for directions and thereafter the trustee should be guided by the judgment of that court, or the Court of

Appeals, should either side appeal. There was also the provision that the trust property should not be liable for the debts of John Ford, Jr., and he should have no right to assign, pledge, convey, or incumber any of said property during the continuance of the trust. It will thus be seen that, with the exception of the surface of the land on Powell's creek, and of the home farm, which was devised to John Ford, Jr., alone during his natural life, all the rest of the property was devised or bequeathed to W. W. Gray, trustee, for the use and benefit, not only of John Ford, Jr., but of his children. It therefore follows that, with the exception of the property noted, the children of John Ford have a joint estate with their father in the income from all the property devised and bequeathed, and are just as much entitled to their share of the income as their father. It is true that the trustee was to pay the income from the bank stock to John Ford, Jr., and his children when needed, but the royalties were to be paid for the same purpose without any limitation.

While the testator provided that in case of difference of opinion between the trustee and his son John as to the sums required for the support of John and his children, the matter should be submitted to the Pike circuit court for direction, it is clear that the testator thought at that time that John Ford, Jr., would represent the interests of his children. However, a situation has arisen where there is a conflict between his interests and those of the children, and we see no reason why, on the application of the mother as next friend and guardian of the children, the chancellor may not under the will as well as under his general control of trust estates, especially where the property rights of infants are involved, take jurisdiction of the matter and direct the trustee what to do, unless he is invested with an absolute discretion. The father knew that his son was improvident. The trust and the various limitations imposed by the will were created for the purpose of preventing the estate or the income from being wasted by the son. It was never intended that the son's children should be deprived of the comforts and advantages that are ordinarily and usually enjoyed by persons of their station in life. The trustee has already accumulated several hundred dollars, which, under the judgment of the chancellor, he may use for the benefit of the two afflicted children. There is no doubt that the children really need not only all, but more than,

the income from their grandfather's estate to which they are entitled. It appears that since the divorce John Ford Jr., has married and has a child by his second wife. A fair division of the income from the trust estate will be to give all the children one-half, thus making the part to which the children of Polly Ford are entitled four-tenths thereof, after paying the expenses of the trust, excluding the taxes, for which provision has been made in the will of Elizabeth Ford. This much they are entitled to under their grandfather's will.

However, it must not be overlooked that they are the children of John Ford, Jr., and that he is under an obligation to assist in their support. It is evident that the amount they will receive from their grandfather will not be sufficient for their needs. One cannot devise his property so that it will not be subject to the debts of the devisee (section 2355, Kentucky Statutes; De Charette v. St. Matthews Bank & Trust Co., 214 Ky. 400, 283 S. W. 410, 50 A. L. R. 34), unless he goes further and provides that, in case it is sought to be subjected, the title shall go to some one else (Bottom v. Fultz, 124 Ky. 302, 98 S. W. 1037, 30 Ky. Law Rep. 479). The testator, John Ford, did provide that, in case his son John Ford, Jr., sold, conveyed, or incumbered his interest in the surface of the Powell creek land or home farm, it should thereupon vest in his children, but there was no such provision respecting the other property devised or bequeathed. In the circumstances the chancellor may properly direct that a portion of the income from the trust estate created under the will of John Ford for the benefit of the son be applied in discharge of the latter's legal obligation to assist in the support of his children. Recently the income of John Ford, Jr., has been materially supplemented by the provisions made for him in his mother's will. Considering the fact that a small home has been provided for Polly Ford and her children, and that she has been awarded permanent alimony in the sum of $25 a month, we have reached the conclusion that John Ford, Jr., should be required to pay for the support of his children the sum of $30 a month. This amount the court will direct the trustee to pay in addition to the children's share of the income from their grandfather's estate.

The court did not err in quashing the execution issued on the order making Polly Ford an allowance pen-

dente lite. Though an execution may properly issue upon a judgment awarding the wife a sum in full of alimony, and all claims under a contract for maintenance (Harrison v. Harrison, 146 Ky. 631, 143 S. W. 40), the same rule does not prevail with respect to temporary allowances payable monthly during the pendency of the action for divorce. Such an allowance can be enforced only by rule. Gerrein's Adm'r v. Michie, 122 Ky. 250, 91 S. W. 252, 28 Ky. Law Rep. 1193. See, also, Franck v. Franck, 107 Ky. 362, 54 S. W. 195, 21 Ky. Law Rep. 1093.

It was also proper to enjoin the sheriff from selling under the execution issued on the judgment for permanent alimony any of the property devised to John Ford, Jr., by his father, since only land to which the execution defendant has legal title can be sold under execution, and the only property to which John Ford, Jr., acquired legal title under the will was not subject to his debts. Evans v. Wheeler, 208 Ky. 1, 270 S. W. 42. Not only so, but Polly Ford admits that the permanent alimony allowance of $25 a month has been and is being regularly paid.

The personal claim of Polly Ford having been withdrawn, we express no opinion as to her right to have the trustee pay the pendente lite allowance made her in the action of divorce.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.