## Goff, et al. v. Daniels.

(Decided February 10, 1915.)

### Appeal from Pike Circuit Court.

1. Fraudulent Conveyances—Conveyance by Husband to Wife—Question of Fraud.—The question whether a voluntary conveyance from a husband to his wife is fraudulent, is not to be determined from the mere fact that the husband was indebted at the time, but from all the circumstances of the case; and if the circumstances do not establish fraud, the conveyance is deemed to be above exception.

2. Husband and Wife—Conveyance by Husband to Wife—When Court of Equity Will Approve.—If a court of equity would have required a husband to convey to his wife land which was bought with her money and conveyed to him by mistake, it will approve a conveyance of said land which he voluntarily made to his wife.

3. Fraudulent Conveyances.—As to subsequent creditors a conveyance is not fraudulent merely because it is voluntary.

J. M. ROBERSON and R. H. COOPER for appellants.

C. M. WHITT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Reversing.

The appellants, W. T. Goff and Nancy Goff, are husband and wife. In the spring of 1910 W. T. Goff became indebted to appellee, Daniels, in the sum of $84.75, for which amount Daniels obtained a judgment against Goff on April 21, 1911. An execution having been issued upon the judgment and returned "no property found," Daniels filed this creditor's bill in the Pike Circuit Court on May 25, 1912, to set aside as fraudulent a deed of March 7, 1912, by which W. T. Goff conveyed to his wife, Nancy, a small tract of land on Pond Creek, in Pike county. The action was brought under Section 1906 of the Kentucky Statutes, which reads as follows:

"Every gift, conveyance, assignment or transfer of or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers or other persons, and every bond or other evidence of debt given, action commenced, or judgment suffered, with like intent, shall be void, as against such creditors, purchasers and other persons. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had no ice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor."

The answer denied the charge of fraud and affirmatively alleged that the land in question really belonged to Nancy; that she had paid for it with her own money; and that the title had been taken to her husband through a mistake of the draughtsman who drew the deed.

The chancellor granted the prayer of the petition, and subjected the lands to the payment of Daniels' debt; and from that judgment Nancy Goff and W. T. Goff appeal.

Nancy Goff explains the transaction by which the land was conveyed to her by her husband as follows:

On July 21, 1904, she bought from a mining company in West Virginia certain property in Williamson, West Virginia, for which she paid $1,250.00, taking the title to herself as her separate estate; that this property greatly enhanced in value, and was sold by Nancy on March 7, 1908, to Alice Moore and others, for $2,800.00. On October 27, 1910, Vicy Goff, the mother of W. T. Goff, and Nancy Goff bought the land here in question from Clelland Davis for $500.00, Vicy Goff furnishing one-half of the money. Nancy Goff testified that she bought and paid for the other half interest with a part of her own money received from the Moore heirs, as above stated; that, in making the purchase, her husband, W. T. Goff, acted as her agent; that she furnished him the money to pay her half of the purchase price; but that by mistake Davis drew the deed to Vicy Goff and W. T. Goff, the persons with whom he traded.

This mistake is explained by the fact that W. T. Goff was not present when the deed was drawn and delivered to his mother, and that it was recorded before Nancy Goff discovered the mistake. Nancy repeatedly demanded of her husband that he correct the deed by

conveying the land to her; and this he finally did on March 7, 1912. This version of the transaction as to how the mistake was made and finally corrected is sustained by the testimony of W. T. Goff and Nancy Goff. They are corroborated to some extent by Davis, and are not contradicted by anybody.

The case, therefore, stands solely upon the testimony of W. T. Goff and Nancy Goff; and as they show that Nancy Goff had the means with which to buy the land in question, and furnished it to her husband for that purpose; and that the title was taken in the name of W. T. Goff by mistake, it becomes our duty to apply the law under these established facts and protect the interest of the wife by approving the transfer of his wife's property to her, if the land should have been conveyed to her originally.

This is not the usual and ordinary case contemplated by the statute where an insolvent debtor conveys his land to his wife, without consideration. On the contrary, it is a case where the wife's property was, by mistake, conveyed to her husband without consideration, and there is an attempt to subject it to the payment of his debt.

In speaking of a voluntary conveyance to a wife or child, in Duhme v. Young, 3 Bush, 350, this court said:

"The question, whether it is fraudulent or not, is to be ascertained, not from the mere fact of indebtment at the time, but from all the circumstances of the case; and if the circumstances do not establish fraud, the voluntary conveyance is deemed to be above all exception."

This case is in its essential features similar to Taylor v. Cooley, 20 Ky. L. R., 1365, 49 S. W., 335, where it was said:

"It may be true that S. W. Cooley transferred to his wife some of the property in question, but the same appears to have been in accordance with an agreement between them that the same should be done on account of large sums of money received and used by S. W. Cooley, which was in fact money or property inherited by his wife from her father, or other relatives, and it does not appear that such transfer was in fraud of any creditor, or that such transfer tended to mislead or defraud any of the creditors of S. W. Cooley."

Likewise, in McCandless v. Rea, 21 Ky. L. R., 1687, 56 S. W., 10, a husband who had received a sum of money

from his wife's father, conveyed real estate to his wife pursuant to his promise to secure the money to her benefit, and the court declined to set aside the conveyance as fraudulent as against the husband's creditors.

In Campbell v. Campbell's Trustee, 79 Ky., 395, as here, the husband bought land with his wife's money and took the title to himself without her knowledge or consent, and subsequently conveyed the land to his wife. In a suit by his creditors to subject the land to the payment of his debts the court said:

"It appears that the husband did not pay any part of the $7,800, but the whole of that sum was paid by his wife with the proceeds of her land and distributable share. It, therefore, follows that her equity is superior to the equity of his creditors, and unless some inexorable legal rule can be interposed to defeat her claim to the 131 acres of land, justice demands that it should not be taken from her for their benefit.

"She neither consented nor acquiesced in making the title to her husband, and her conduct is without fraud, and free from any just suspicion of dishonesty.

"And this court has held, in the case of Miller and Wife v. Edwards, &c., 7 Bush, 397, the facts of which are analogous to this case, that 'such a contract as that made with her husband before her land was sold is valid and enforceable as between the parties to it, as a prudent mode of preserving her estate against his improvidence or capricious power.'

"This principle of law seemed to be so well established that the court said in that case, it 'now requires no citation of authorities in its support.'"

The principle above announced is recognized in Doty v. Louisville Banking Co., 10 Ky. L. R., 899, 11 S. W., 78; Darling v. Hanks, 21 Ky. L. R., 147, 42 S. W., 1130, 51 S. W., 792; Trosper v. Collins, 25 Ky. L. R., 115, 74 S. W., 710; and in other cases.

A court of equity would have required W. T. Goff to do this at any time at the suit of his wife, upon the facts shown in this record; and if the chancellor would have required him to make the transfer under the circumstances, it will approve that which he did voluntarily.

Furthermore, it will be noticed that the debt of Daniels was created in the spring of 1910, and the conveyance by Davis to W. T. Goff was not made until October

27th of that year. So, it cannot be said that Daniels gave credit to W. T. Goff upon the faith of his ownership of the land in question. As to subsequent creditors a conveyance is not fraudulent merely because it is voluntary. Duhme v. Young, 3 Bush, 343; Place v. Rhem, 7 Bush, 585. As no fraud has been shown, but only an act of justice by W. T. Goff to his wife, her superior equity should be protected.

Judgment reversed with instructions to dismiss the petition in so far as it seeks to subject the land of Nancy Goff.